# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01379-COA

**GERALD BAILEY**                                                                 **APPELLANT**

**v.**

**THE ESTATE OF JERRY ANN BARKSDALE,**                        **APPELLEE**
**DECEASED, AND HEIRS-AT-LAW**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/25/2014 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ELLIOT G. MESTAYER |
| ATTORNEYS FOR APPELLEE: | SHAWN M. LOWREY |
| | THOMAS MICHAEL REED |
| | RICHARD ANTHONY FILCE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| TRIAL COURT DISPOSITION: | APPELLANT'S MISSISSIPPI RULE OF CIVIL PROCEDURE 60 MOTION DENIED |
| DISPOSITION: | APPEAL DISMISSED: 03/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     This appeal arises from a claim brought against Gerald E. Bailey by the estate of Jerry

Ann Barksdale, deceased.  The Court has determined that it is without jurisdiction to decide

this appeal because there was neither a final judgment nor a Mississippi Rule of Civil

Procedure 54(b) determination.  Accordingly, the case is dismissed.

## FACTS

¶2.     A full recitation of facts is necessary to understand this Court's action.

¶3.     Jerry Ann Barksdale died on March 13, 2012.  As of the date of her death, Barksdale

was survived by her children: Gerald E. Bailey, Cecil E. Bailey, Larry R. Bailey, Deborah Steele, Kenny Joe Pickering, Paulette Shaws, and Johnny Earl Pickering.[1] Her husband had died on February 24, 2012.

¶4. On April 24, 2012, Larry Bailey filed a petition for appointment of an administrator and for issuance of letters of administration. The petition asked that Steve Headrick be appointed the administrator. Larry's petition stated that he was unaware of whether Barksdale died with a will but understood that her will may have been in the possession of Gerald. On May 8, 2012, the chancellor entered an order authorizing appointment of an administrator and issuance of letters of administration and appointed Headrick as administrator. On May 23, Headrick executed the oath of administrator and filed the required bond. On May 24, letters of administration were issued to Headrick.

¶5. On July 10, 2012, Headrick filed a petition for a determination of the heirs-at-law. In the petition, he asked the chancery court to determine Barksdale's heirs to be her children: Gerald E. Bailey, Cecil E. Bailey, Larry R. Bailey, Deborah Steele, Kenny Joe Pickering, Paulette Shaws, and Johnny Earl Pickering. The chancery court's docket indicates that Headrick published notice of the petition by publication, but it does not indicate that any of the known heirs were served with process or entered an appearance by waiver of process.

¶6. On August 13, 2012, a document titled "Last Will and Testament of Jerry Ann Barksdale" was filed. There was no accompanying petition, motion, or any other document

---

[1] There is some discrepancy as to the names and number of Barksdale's children in the briefs and the record. For clarity, this Court adopts the listing of the heirs-at-law as enumerated in the petition for the determination of the heirs-at-law.

filed. There is no indication as to who filed this document.

¶7. On August 14, 2012, Headrick filed a petition for an order to return property to the estate and other relief against Gerald. In this petition, Headrick alleged that Gerald should be ordered to return certain assets to the estate. The petition stated that, at the end of her life, Barksdale had given Gerald her power of attorney, and Gerald had improperly used and converted some of her assets. The petition specifically asked the chancery court to: (1) order Gerald render a full, completed, and documented accounting; (2) enter a declaratory judgment finding Gerald had a confidential relationship with Barksdale and exerted undue influence on her for his personal gain; (3) order the return of property Gerald obtained through unjust enrichment; and (4) establish a constructive trust over Barksdale's assets that Gerald had wrongfully obtained, along with interest and attorney's fees. The petition did not include a demand for an award of a specific monetary amount.

¶8. According to the clerk's docket, on August 14, 2012, the clerk issued both a Mississippi Rule of Civil Procedure 81 summons and a "30 day summons" to Gerald.

¶9. On August 20, 2012, the chancellor entered a judgment for default of unknown heirs. The order indicates that process was served on "all possible known heirs, interested parties[,] and unknown heirs" by publication. It also provides that "any and all other interested parties and unknown heirs have waived any rights by failing to appear." The judgment determined the heirs to be the children named above.

¶10. On August 22, 2012, the clerk's docket indicated: "30-day and Rule 81 [s]ummons returned showing personal service on Gerald Bailey on the 14th day of August, 2012." The

returned summonses are not included in the record before this Court. Although not in the record, it appears that the Rule 81 summons set the matter to be heard on September 13, 2012. Gerald denies that he was personally served with process. Gerald did not file a response to the Rule 4 (the thirty-day) summons or the Rule 81 summons, and he did not appear before the chancellor on September 13, 2012.

¶11. On September 14, 2012, nunc pro tunc September 13, 2012, the chancellor entered an order to show cause. The order ruled that the chancery court had jurisdiction over the parties, the venue was proper, Gerald was properly served with a Rule 81 summons returnable to the court on September 13, 2012, and he failed to appear. The chancery court also ordered that "a new court date shall be set by counsel for the Estate and that this Order shall be served on Gerald E. Bailey to show cause why he has not appeared to answer the allegations in the petition for order and to return property and other relief." The chancery court further ordered the estate was entitled to an inventory and accounting of all assets in the bank accounts that Gerald had control of prior to his mother's death. Gerald was given thirty days to submit the inventory and accounting.

¶12. On September 18, 2012, the estate filed an application to the clerk for entry of default and a motion for a default judgment. The clerk executed and filed the entry of default on the same day.

¶13. On September 21, 2012, the clerk's docket indicated a "notice of hearing" and a "Rule 81 summons issued to sheriff/process server for service on Gerald E. Bailey and returnable on the 27th day of November, 2012." The docket does not indicate what was set for a

4

hearing. On September 26, 2012, there was a another docket entry identical to the entry quoted above.

¶14. On September 21, 2012, the chancellor executed a default judgment. The default judgment indicated that Gerald took advantage of a confidential relationship with Barksdale and exerted undue influence over her, and that all of the transfers were against Barksdale's best interest. The chancery court ordered a "constructive trust is in effect and that all said assets shall be returned to the estate, or if they have already been spent, shall operate as a set-off against any portion of the Estate that Gerald may be entitled to." The order also provided Gerald "shall pay all of the attorney[']s fees that were necessary to return said funds to the estate." The default judgment did not include any monetary amount. Also, the record does not include any transcript of the hearing on the motion for a default judgment or the writ of inquiry.

¶15. On September 26 and 28, the clerk's docket again indicated a "notice of hearing (11/27/2012)" without an indication of what was set for a hearing.

¶16. On October 1, 2012, the clerk's docket indicated a "[f]iat authorizing process to issue for [sic] on the 27th day of November, 2012, returnable to Lamar County, Mississippi."

¶17. On October 11, 2012, the clerk's docket indicated "Rule 81 Summons Returned" and stated, "I hereby certify that I have executed the within writ by personally delivering to the within named Gerald E. Bailey a true copy of this writ. This the 27th day of November, 2012. By Brent Perreault."

¶18. On September 21, 2012, the clerk's docket indicated a "notice of hearing" and a "Rule

5

81 summons issued to sheriff/process server for service on Gerald E. Bailey and returnable on the 27th day of November, 2012."

¶19. On November 5, 2012, through counsel, Gerald filed a petition to approve accounting. The petition also included an affidavit of a subscribing witness, Nancy Lamar, who stated that she witnessed Barksdale sign her Last Will and Testament.

¶20. On January 11, 2013, Gerald filed a "Rule 60 Motion." In this motion, he asked the chancery court to set aside the default judgment or, alternatively, a hearing to specify the relief granted under the default judgment. No hearing was set for this matter.

¶21. On February 15, 2013, Gerald filed a petition to approve accounting.

¶22. On February 20, 2013, the chancellor executed an "Order of November 27th, 2012." The order indicated that it was "nunc pro tunc, 27th day of November, 2012." It also provided that Gerald was given additional time until January 15, 2013, to provide a full inventory and accounting, he was to provide the keys to Barksdale's home to Headrick, and Headrick was authorized to clean the home and pay any bills associated with the home. The order also required Headrick to provide an inventory of the assets in the home by January 15, 2013. Despite this order, neither the record nor the clerk's docket indicates that a hearing was held on November 27, 2012.

¶23. On February 26, 2013, Gerald filed an amended petition to approve the accounting. Then on April 24, 2013, Gerald filed a petition to admit the will and issue letters testamentary.

¶24. On August 19, 2013, Headrick filed a response to Gerald's petition to admit the will

6

and issue letters testamentary. Then, on November 14, 2013, Headrick filed a supplemental inventory and a preliminary inventory, which was dated January 9, 2013.

¶25. On January 24, 2014, Headrick filed a motion to sell (Barksdale's) home and car. On March 21, 2014, "nunc pro tunc, 25th day of February, 2014," the chancellor executed an "Agreed Order of February 25, 2014" that allowed the estate to list the home and sell the automobile. The order also read: "[T]his matter is set for trial at 9:00 a.m. on Thursday June 5, 2014."

¶26. On April 3, 2014, Headrick filed a motion for reimbursement and to pay routine bills. On the same day, an order was entered approving the motion.

¶27. A hearing was held on June 5, 2014, by an agreed order. Gerald testified and was questioned by the chancery court about his failure to appear previously. He testified that he had not received personal service but heard about the hearing from his brother. The chancellor indicated that Gerald did know about the hearing and refused to set aside the default judgment. Gerald also testified about his actions regarding Barksdale's finances before and after she died.

¶28. On June 25, 2014, the chancellor signed a judgment. The judgment was not filed until August 26, 2014. According to the judgment, the chancellor ruled:

1. That the motion to set aside default judgment of September 21, 2012[,] is overruled.

2. The court finds that the estate is entitled to a judgment against Gerald E. Bailey in the amount of . . . $158,846.00. This amount reflects all amounts taken by Gerald E. Bailey, minus those that the court has found were legitimate expenses for the use and interest of the decent [sic] Jerry Ann Barksdale.

7

3.  Gerald E. Bailey has testified that he has somewhere in excess of Forty Thousand Dollars remaining of the money taken. The court recognizes a constructive trust over these assets and immediately orders that all of these assets will be turned over to Steve Headrick, the Executor of the estate. Any money that is returned shall act as a set off against the judgment ordered in paragraph 2.

4.  Attorney[']s fees shall also be issued against Gerald E. Bailey, and the total of which shall be decided by the court at the close of the estate and act as a further judgment against him at that time.

5.  The court approves payment of . . . $7,500.00 to [counsel for the estate]. Remaining Expenses shall be submitted at the close of the estate upon final adjudication.

6.  That the will on file will continue to be probated with Gerald receiving 25% with the court holding the added black ink marking on the will of "50%" for nought.

¶29. On September 3, 2014, Headrick, as "executor," filed a petition for approval of the first annual accounting and partial distribution.

¶30. On September 23, 2014, Gerald filed his notice of appeal "from the judgment entered in this case on August 26, 201[sic] and the denial of the relief contained in all of the appellant's pleadings."

¶31. On October 24, 2014, Gerald filed his answer to the petition for approval of the first annual accounting and partial distribution.

¶32. On November 24, 2014, Headrick filed a petition to sell real estate. At this point, the record before this Court ends.

ANALYSIS

¶33. Gerald's appeal raises several issues. The primary issue is whether the chancellor was correct to enter a default judgment in an estate matter, among other issues.

8

¶34. However, we cannot get past our jurisdictional review of the chancellor's judgment that Gerald has appealed from. The chancellor's judgment, signed on June 25, 2014, and filed on August 26, 2014, simply does not grant full relief. It is not a final, appealable judgment. In paragraph 4, the chancellor ruled:

> Attorney[']s fees shall also be issued against Gerald E. Bailey, and the total of which shall be decided by the court at the close of the estate and act as a further judgment against him at that time.

¶35. Although the parties have not raised the issue of appellate jurisdiction, we must address whether the chancellor's order was a final, appealable judgment under Mississippi Rule of Civil Procedure 54(b). *Clausell v. Bourque*, 122 So. 3d 825, 827 (¶6) (Miss. Ct. App. 2013) (citing *Williams v. Delta Reg'l Med. Ctr.*, 740 So. 2d 284, 285 (¶5) (Miss. 1999)).

¶36. Under Rule 54(b), the chancellor may "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties." However, for the judgment to be final, the order must make an "expressed determination that there is no just reason for delay" and an "expressed direction for the entry of the judgment." *Id.* Without such express determinations, the order is interlocutory.

¶37. Here, the estate's petition made a claim for attorney's fees against Gerald. After a trial, the chancellor expressly refrained from ruling on the attorney's fee claim until "the close of the estate." Thus, the estate's claim for attorney's fees is still pending before the chancellor. The judgment is not a final, appealable judgment. In *In re Estate of Lewis*, 135 So. 3d 202, 206 (¶¶15-16) (Miss. Ct. App. 2014), this Court dismissed an appeal under Rule 54(b) because the chancellor did not resolve "the issue of the attorneys' fees incurred." We

9

held it was not final and appealable and dismissed the appeal for lack of jurisdiction. *Id.*

¶38. Here, regrettably, we must do the same. This appeal is dismissed for lack of jurisdiction.

¶39. **THIS APPEAL IS DISMISSED FOR LACK OF JURISDICTION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES, J., DISSENTS WITH SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.**

**JAMES, J., DISSENTING:**

¶40. I would find that the case should be dismissed for lack of subject-matter jurisdiction;[2] thus, I respectfully dissent.

¶41. Gerald argues that the trial court erred in denying his Mississippi Rule of Civil Procedure 60 motion, because it was fundamentally unfair to enter a default judgment since no answer is required under Rule 81, and he did not appear on September 13. Moreover, there was no hearing or introduction of evidence on the estate's petition.

¶42. Under Rule 81, even when the defendant is properly served and fails to appear, an entry of default is improper since no answer is required to be filed by the defendant unless ordered by the court. *Saddler v. Saddler*, 556 So. 2d 344, 345 (Miss. 1990). The trial court must hold an evidentiary hearing on the issues set out in the pleadings before granting a judgment, and failure to do so is reversible error. *Curry v. Frazier*, 119 So. 3d 362, 366 (¶12) (Miss. Ct. App. 2013).

---

[2] "Jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things." Black's Law Dictionary 93 (10th ed. 2014)

¶43. The estate argues that the claims for which the default judgment was granted are not within Rule 81(d)(2) jurisdiction. The chancellor's default judgment and order to show cause indicate that she, likewise, had determined that while some of the claims in that petition were within the jurisdiction of Rule 81(d)(2), the claims of unjust enrichment, constructive trust, and breach of fiduciary duty were not. And on that basis, since Gerald was served with a Rule 4 summons and failed to respond within thirty days, the chancery court granted a default judgment on those three claims.

¶44. As to the estate's argument that the claims of unjust enrichment, constructive trust, and breach of fiduciary duty generally are not exclusively within Rule 81(d)(2) jurisdiction, I agree. Nevertheless, the specific claims at issue were brought within a petition dealing with estate matters. The Mississippi Rules of Civil Procedure are clear that, when dealing with estate matters, Rule 81 governs. M.R.C.P. 81(d)(2). No interpretation of that rule in any way suggests that the court may choose to apply a Rule 4 summons to underlying causes of action enumerated in a petition dealing with estate matters. Furthermore, there is no caselaw to support the estate's argument that this procedure is proper.

¶45. Rule 81(d)(3) states that "[c]omplaints and petitions filed in the actions and matters enumerated in subparagraphs (1) and (2) above shall not be taken as confessed." Although the record does not say what transpired on September 13 when the case was set for a hearing, the record does show that Gerald was not present in court. The chancellor granted the default judgment because Gerald failed to file a response within thirty days and failed to appear on September 13. Thus, the default judgment was granted under Rule 4.

11

¶46.     The majority opinion relies on the fact that the parties did not obtain permission from the trial court and our supreme court under Mississippi Rule of Appellate Procedure 5. Under Rule 5, an interlocutory order is not appealable unless the Mississippi Supreme Court grants permission. Under Rule 54(b), a trial judge "may direct the entry of a final judgment as to one or more but fewer than all of the claims of the parties." Here, the chancellor did not make this determination because it was not requested. I agree with the majority opinion that a Rule 54(b) certification is required in order to appeal an intermediate ruling.

¶47.     However, the Rule 4 summons did not give the chancellor jurisdiction over those claims before the chancery court. Since jurisdiction was not proper, the trial court did not have the authority to grant a default judgment, nor does the appellate court have jurisdiction to hear the appeal. The estate issued a Rule 4 and Rule 81 summons as a "catch all" tactic, but our rules do not provide for this procedure.

¶48.     The lack of proper service of process is both jurisdictional and dispositive in this case. Even though there is no Rule 54(b) certification, we should not reach that issue since process was not proper.

¶49.     The record before the Court indicates that the default judgment was granted because Gerald had been properly served with a Rule 4 summons. The record before this Court also indicates that no hearing was held on September 13 as Rule 81 requires. Because Rule 4 did not give the chancellor the authority to grant the default on an estate matter, I would dismiss the case for lack of subject-matter jurisdiction.